**MATTEL, INC.**

**v.**

**UNITED STATES.**

**C.D. 4547.**

United States Customs Court.

June 5, 1974.

R. Kenton Musgrave, New York City (Barnes, Richardson & Colburn, New York City, associate counsel, Joseph Schwartz and Irving Levine, New York City, of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (Velta A. Melnbrencis, New York City, trial atty.), for defendant.

MALETZ, Judge:

These six consolidated actions come before the court on plaintiff's motion for judgment on the pleadings and defendant's cross-motion for summary judgment. The merit of plaintiff's claim as to the proper classification of the importations is not in dispute. The sole issue, rather, is whether certain "Sec. 520(c) request letters" (as they are characterized in the complaint) constitute valid protests within the meaning of section 514 of the Tariff Act of 1930, as amended (19 U.S.C. 1514),[1] and

1. The statutory references here and hereafter are to the provisions that were in effect during the period in issue, which period antedated the amendments effected by the Customs Courts Act of 1970, Pub.L. 91–271, 84 Stat. 274. Also for this reason, all U.S.C. references are to the 1964 edition.

thereby invest this court with jurisdiction over the actions.

The importations in question consist of wigs for dolls which were entered at the port of Los Angeles between March 1967 and October 1967 and classified by the government under item 737.90 of the tariff schedules as "toys," dutiable at the rate of 35% ad valorem. Further, the present importations are the same in all material respects as the wigs for dolls involved in Mattel, Inc. v. United States, 61 Cust.Ct. 75, C.D. 3531, 287 F. Supp. 999 (1968), which were held to be properly classifiable under item 790.70 as "wigs," dutiable at the rate of 14% ad valorem, rather than under item 737.-90 as "toys."

The entries covered by the present protests were liquidated between October 14, 1968 and November 22, 1968, after the decision in C.D. 3531 had become final and prior to the decision of the Commissioner of Customs, published on December 19, 1968, to limit that decision to the specific importation there involved (T.D. 69–2).[2]

Within 60 days after each liquidation, plaintiff filed a letter with the district director of customs requesting correction under section 520(c) of the Tariff Act of 1930, as amended (19 U.S.C. 1520(c)), of the classification of the wigs. The letters, which were signed by the "Manager Customs Administration" of the plaintiff-importer, are identical in format and wording except for the specific data relating to the particular entry. Each lists the I.R.S. number, entry number, date of entry and of liquidation, and reads as follows (as taken from the letter dated November 25, 1968 in entry number DE 67–262294 in protest 70/42452):

Gentlemen:

Correction is requested under Section 520(c) of the Tariff Act of 1930, as amended, concerning wigs, which were classified as "Toys" under item 737.90. In a Customs Court Decision (C.D. 3531), Mattel, Inc. v. United States, decided August 8, 1968, it was held these wigs were classifiable under item 790.70 at [sic] "Wigs."

| Article No. | Commodity | Returned At | Should be |
|---|---|---|---|
| 1379–9993 1394–9993 | Wigs | 35% | 14% |

The supervisory liquidator, Customs Region VII, denied the requests in letters which began—

Your claim dated * * * has been reviewed by this office under the provisions of section 520(c)(1), Tariff Act of 1930.

and then stated (in language which varied in each) that C.D. 3531 was restricted to the specific merchandise therein and that the wigs would remain classified under item 737.20.[3]

Within 60 days thereafter, plaintiff filed a protest in each of the actions herein against the refusal to reliquidate.

The protests in court numbers 69/27099, 69/27100 and 69/27101 read in pertinent part as follows:

* * * The reasons for objections under the Tariff Act of 1930 or any amendments thereto are as follows: Request for correction under 520(c) of the Tariff Act was timely made after liquidation of this entry on 10/14/68. Basis for this request was C.D. 3531 decided August 8, 1968, and a telephone call to Mr. Michael Long of the liquidation division, U.S. Customs, in which permission was given

---

2. In a second test case, involving merchandise "substantially identical" to that in C.D. 3531, the court again held that wigs for dolls were properly classifiable under item 790.70 as wigs rather than as toys under item 737.90, Mattel, Inc. v. United States, 65 Cust.Ct. 616, C.D. 4147 (1970).

3. For example, the letters refusing to reliquidate the entries covered by protests 69/27099, 69/27100 and 69/27101 stated:

It has been disallowed because no error was made in liquidation. The liquidated tariff classification is correct. C.D. 3531 limits to specific importation which was the subject of that decision [sic].

The letter refusing to reliquidate the entry covered by protest 70/42452 stated:

It has been disallowed because of T.D. 69–2—the import specialist's office would classify under 737.90.

to handle this matter as a mistake of fact under 520(c) instead of a formal protest. The Bureau's decision to limit to the specific importation, which was the subject of C.D. 3531, was published in the Federal Register on December 19, 1968, over one month after the liquidation of this entry. We claim that liquidation of this entry on 10/14/68 with a classification of toy for wigs was a mistake of fact at this time. We therefore protest the refusal of the Director to re-liquidate this entry under 520(c). * * *

The other three protests were in like vein: they stated that correction had been requested under section 520(c) (for the reason indicated); cited C.D. 3531 as the basis for the claimed classification and rate; and noted the subsequent administrative determination to limit that decision to the entry therein.

Plaintiff's complaint, which was based on the district director's refusal to reliquidate under section 520(c) was amended to include, as a second cause of action, the claim that the letters requesting reliquidation constituted timely protests filed under section 514 of the Tariff Act of 1930, as amended, and should have been treated as such by the appropriate customs officials. Subsequently, plaintiff abandoned its claim under section 520(c), leaving only its contention that the letters are valid section 514 protests.

Sections 514 and 520(c) of the Tariff Act of 1930, as amended (19 U.S.C. 1514 and 1520(c)), read in pertinent part as follows:

*Sec. 514. Protest against collector's decisions.*

* * * all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable * * * and his liquidation or reliquidation of any entry * * * shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons * * * unless the importer, consignee, or agent of the person * * * shall, within sixty days after * * * file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation.

*Sec. 520. Refunds and errors.*

* * * * * *

(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction; * * *

The authorization in section 514 for filing protests against any decision of the collector as to the rate and amount of duties chargeable upon imported merchandise requires a distinct and specific statement of the reasons for the objection thereto. While no formal rules have been devised for the manner in which such objections should be expressed, the court has held letters to be sufficient as protests where they conveyed to the customs officials the objec-

tion in the mind of the protesting party so that the former would have an opportunity to review their decision and take action accordingly. This principle was expressed as follows in the oft-cited case of United States v. Sheldon & Co., 5 Ct. Cust.Appls. 427, 429, T.D. 34946 (1914):

It was held in substance in Bliven v. United States (1 Ct.Cust.Appls., 205) that one cardinal rule in construing a protest is that it must show fairly that the objection afterwards made at the trial was in the mind of the party at the time the protest was made and was brought to the knowledge of the collector to the end that he might ascertain the precise facts and have an opportunity to correct the mistake and cure the defect if it was one that could be obviated. This, in effect, has long been the doctrine enunciated by the Supreme Court of the United States. Davies v. Arthur (96 U.S., 148 [24 L.Ed. 758]), Arthur v. Morgan (112 U.S., 495 [5 S.Ct. 241, 28 L. Ed. 825]), United States v. Salambier (170 U.S., 621 [18 S.Ct. 771, 42 L.Ed. 1167]). See also Carter v. United States (1 Ct.Cust.Appls., 64; T.D. 31033) and Sonneborn's Sons v. United States (3 Ct.Cust.Appls., 54; T.D. 32348).

In the various cases where this principle has been upheld it will appear that in some the correct paragraph has been cited without mentioning the rate of duty; again, the correct rate has been mentioned without referring to the paragraph; and other discrepancies and infirmities have been considered and discussed. It has, however, uniformly been considered, as already suggested, that one great rule of construction is that *at the time he makes his protest the importer must have in mind the objection afterwards made at the trial* and must sufficiently, in view of all the circumstances, call the collector's attention thereto, so that he may consider and pass upon the same; and the determination of this case must stand

or fall upon the application of that rule. [Emphasis in original.]

To similar effect is the following statement in National Carloading Corporation v. United States, 44 Cust.Ct. 493–494, Abstract 64258 (1960):

The right of an importer to protest a liquidation of imported merchandise is statutory. Section 514 of the Tariff Act of 1930 is the enabling provision. It specifies the time for filing a protest, to wit, within 60 days after liquidation, and the substance thereof, to wit, that it shall be in writing, "setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto."

It has been said of a protest that it need not be made with technical precision, but it is sufficient "if the importer indicates distinctly and definitely the source of his complaint, and his design to make it the foundation for a claim against the government." Greeley's Administrator v. Burgess (Converse v. Burgess), [18 How. 413] 59 U.S. 413 [15 L.Ed. 455]. If it fairly and accurately apprises the collector of the objection which is raised against his action, so that he may have an opportunity to reconsider, a protest is legally sufficient. Arthur v. Morgan, 112 U.S. 495 [5 S.Ct. 241, 28 L.Ed. 825].

* * * A protest which indicates to an intelligent man the ground of the importer's objection to the duty levied upon the articles should not be discarded because of the brevity with which the objection is stated. [Schell's Executors v. Fauché, 138 U.S. 562 [11 S.Ct. 376, 34 L.Ed. 1040].]

However, it is also settled law that a protest must point out or suggest the provision of law which is claimed controls the classification of the subject merchandise and the assessment of duty thereon. Herrmann [Herrman] v. Robertson, 152 U.S. 521 [14

S.Ct. 686, 38 L.Ed. 538]. It may not incorporate, by reference to another document, the reasons embodied therein, unless the same is physically annexed to the writing which purports to be the protest. Robert G. Winny v. United States, 7 Treas.Dec. 774, T.D. 25297. And if the protest itself gives no indication of the reasons why the collector's action is alleged to be erroneous, and, further, does not set forth the paragraphs which allegedly properly govern the disposition of the merchandise, the document is fatally defective. Bernard, Judae & Co. v. United States, 71 Treas.Dec. 558, T. D. 48899.

Applying the criteria enunciated in *Sheldon* and *National Carloading*, letters have been held to be sufficient as protests where plaintiff gave the wrong entry number, International Forwarding Co. v. United States, 36 Treas.Dec. 294, T.D. 37972 (1919) ; cited the wrong law as the basis for its claim, Gallagher & Ascher Co. v. United States, 45 Cust.Ct. 354, Abstract 64820 (1960) ; failed to cite the presidential proclamations which imposed the fee that was being challenged, How-Tex Peanut Company, Inc. v. United States, 54 Cust.Ct. 316, Abstract 69066 (1965) ; failed to cite the claimed applicable provision of the tariff statute, Palmer Import Co., Inc. v. United States, 55 Cust.Ct. 434, Abstract 69561 (1965) ; Norman G. Jensen, Inc. v. United States, 55 Cust.Ct. 418, Abstract 69537 (1965) ; failed to enumerate the tariff paragraph *and* rates of duty claimed to be applicable, Needler's British Imports v. United States, 39 Cust.Ct. 321, Abstract 60926 (1957) ; failed to specify the applicable paragraph or rate of duty where error was alleged in classifying separately invoiced importations as entireties, Torch Mfg. Co., Inc. v. United States, 57 Cust.Ct. 521, C.D. 2863 (1966) ; failed to specify the specific provision within the claimed paragraph relied upon, W. J. Byrnes & Co., Inc., National Welding Equip. Co. v. United States, 56 Cust.Ct. 72, C.D. 2613 (1966) ; failed to cite by name the dif-

ferent articles covered by the protest which referred to the merchandise solely as "engine parts," Beck Distributing Corp. v. United States, 67 Cust.Ct. 358, C.D. 4298 (1971) ; and failed to specify the objection to the collector's action but referred therein to another letter which set forth the substance of its claims, Atlantic Linen Importing Co. v. United States, 54 Cust.Ct. 290, Abstract 68985 (1964).

In short, the court, taking a liberal posture, has held that, however cryptic, inartistic, or poorly drawn a communication may be, it is sufficient as a protest for purposes of section 514 if it conveys enough information to apprise knowledgeable officials of the importer's intent and the relief sought. Thus, even a letter which included a request as to the procedure for protesting was treated as legally sufficient where it was timely and disclosed the basis for plaintiff's objections. Robert Seibert (Mrs. Robert Seibert) v. United States, 65 Cust.Ct. 380, C.D. 4108 (1970).

Turning to the letters in issue, there can be no doubt as to the nature of plaintiff's objection to the district director's liquidation of the entries in issue, namely, that the district director erred in assessing the imported doll wigs under item 737.90 at 35% and that they should have been assessed under item 790.70 at 14%.

However, a determination by customs officers as to the classification of merchandise is a conclusion of law. United States v. Imperial Wall Paper Co., 14 Ct.Cust.Appls. 280, 282, T.D. 41886 (1926). Therefore, an erroneous classification of merchandise by the district director under the tariff statute is not a "clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law" within the meaning of section 520(c), but a mistake as to the applicable law which could only be remedied by filing a protest under section 514 within 60 days after liquidation. Fibrous Glass Products, Inc. v. United States, 63 Cust.Ct. 62, C.D. 3874 (1969), appeal dismissed,

57 CCPA 141 (1970); United China & Glass Co. v. United States, 66 Cust.Ct. 207, 211, C.D. 4191 (1971).

In *Fibrous Glass Products,* plaintiff filed a protest within 60 days after the denial by the collector of its request for relief under section 520(c). This request for relief was filed over nine months after liquidation of the entry and was based on an alleged mistake of fact by the collector in not classifying certain fiber glass mats in conformity with the decision in United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc., 318 F.2d 737, 50 CCPA 1, C.A.D. 809 (1962), involving similarly produced sheets of particle board.

The court in *Fibrous Glass Products* dismissed the protest, holding (63 Cust. Ct. at 64–65):

> * * * Plaintiff's request for relief to correct a mistake of fact under section 1520(c)(1) filed nine and a half months after liquidation is actually an attempt to correct an error of judgment on the part of the collector in making a classification of the merchandise under the wrong paragraph of the Tariff Act of 1930, which is a mistake in the applicable law. A finding that merchandise is covered by a certain paragraph of the tariff act is in the nature of a conclusion of law. United States v. Imperial Wall Paper Co., 14 Ct.Cust.Appls. 280, T.D. 41886 (1926). Section 1520(c)(1) expressly excepts mistakes of law from its coverage. Plaintiff's remedy was to file a protest under section 1514 of Title 19 of U.S.C.A. (section 514, Tariff Act of 1930, as amended) within sixty days after liquidation.
>
> Since plaintiff is seeking to correct an error amounting to an error in the

construction of a law and its protest was filed after the expiration of the time limitation imposed by section 1514 of Title 19 of U.S.C.A. (section 514, Tariff Act of 1930, as amended) for the filing of protest to correct such errors the court is without power to entertain it. It, therefore, follows that the claim presented in plaintiff's protest is not before the court for decision, and the protest must be dismissed for lack of jurisdiction.

A similar situation arose in United China & Glass Co. v. United States, *supra,* 66 Cust.Ct. 207, where plaintiff had filed under section 520(c) a petition for reliquidation of an entry of decorated cups and saucers some eight months after liquidation. The petition claimed that the merchandise had been classified by the collector as "tableware" contrary to the holding in United States v. Baltimore & Ohio R. R. Co. a/c United China & Glass Company, 47 CCPA 1, C.A.D. 719 (1959); that similar articles were "not tableware"; and that the collector's action therefore constituted a clerical error, mistake of fact, or other inadvertence in the liquidation not amounting to an error in the construction of law under section 520(c). A protest was filed within 60 days after the collector's refusal to reliquidate the entry under section 520.

The court granted defendant's motion to dismiss the protest for lack of jurisdiction and, citing the *Fibrous Glass* case, stated, among other things, that plaintiff's request to correct a clerical error was actually an attempt to correct an error in the construction of the law; that its remedy was to file a protest within 60 days after liquidation under section 514; and that, in the absence of such timely filing, the protest must be dismissed for lack of jurisdiction. 66 Cust.Ct. at 211–212.[4]

---

4. See also C. J. Tower & Sons of Buffalo, Inc. v. United States, 68 Cust.Ct. 17, C.D. 4327, 336 F.Supp. 1395 (1972) (appeal pending), where the court examined the legislative history of section 520(c), as amended by the Customs Simplification Act of 1953, 67 Stat. 519, and noted that ordinarily a request for reclassification based upon an error of judgment concerning the construction of a law is not a matter within the scope of section 520(c), but within the purview of section 514.

■ In short, where an importer's 520(c) claim is based on an alleged error of law and is filed after the 60-day period provided for in section 514, this court will refuse to entertain it for lack of jurisdiction. E. g., Fibrous Glass Products, Inc. v. United States, *supra*, 63 Cust.Ct. 62; United China & Glass Co. v. United States, *supra*, 66 Cust.Ct. 207.

On the other hand, where such a claim is filed *within* 60 days after liquidation and meets all the standards (discussed above) for a section 514 protest, the court has held that it had jurisdiction. For example, in W. N. Proctor Company v. United States, 64 Cust.Ct. 543, C.D. 4031 (1970), plaintiff had filed objections within 60 days after liquidation to the classification of merchandise in two entries, claiming in each instance that the importation was classifiable under another provision at a specified rate, and requesting as to each liquidation to *"have the invoice returned to the U.S. Appraiser under Section 520(c)(1)."* [Emphasis added.] In each case the collector denied the "protest" stating that it was reviewed by him "in accordance with section 515, Tariff Act of 1930, and was affirmed." After evidence had been aduced on trial, defendant raised the issue that there was no proper protest before the court. "Presumably," the court noted, "this position rested on the contention that there was no timely protest under section 514 and that the collector had not refused to reliquidate under section 520." 64 Cust.Ct. at 544. The presiding judge then granted plaintiff's motion to amend the protests (over defendant's objection) by alternatively claiming that the merchandise was classifiable as claimed in the protests originally filed.

The court found that the section 514 filing requirements were met, stating (64 Cust.Ct. at 545):

Whether or not the protests might have been acceptable as a request for reliquidation to correct a manifest clerical error, there is no occasion now to speculate. Plaintiff does not press any such claim, but rests on the contention that they meet the statutory requirement for protests filed under section 514 and were acted on as such by the collector in reporting to the court the affirmance of his "protested decision".

We agree with our colleagues of the Third Division who recently held that an attempt to correct an error of judgment on the part of the collector in classifying merchandise is a mistake of law and requires protest to be filed within sixty days after liquidation.

That filing requirement has been met here. Fibrous Glass Products, Inc. v. United States, 63 Cust.Ct. 62, C.D. 3874 (1969) [appeal dismissed].

Thus, in *Proctor*, the court did not hesitate to look beyond the form of the importer's objections to their substance in order to determine their true character and decide whether they met the jurisdictional requirements of the applicable statute.[5]

■ By the same token, this court finds no basis for denying the sufficiency of letters which, as defendant concedes, meet the requirements of section 514 that they "shall state distinctly and specifically certain matters in respect to each entry" (br. 13) merely because of the gratuitous addition of the words "under section 520(c)." The fact that

---

5. To like effect is J. Honig v. United States, 16 Cust.Ct. 276, Abstract 51091 (1946) where plaintiff filed a protest seven months after liquidation claiming clerical error under section 520(c). After trial, the court stated (p. 277) that "[a]*lthough the claim set forth in that protest is termed clerical error*

*it is clearly a protest against the collector's classification,"* but decided to overrule rather than dismiss the protest. [Emphasis added.] It then denied a motion to amend the protest to include a classification claim on the ground that it would nullify the statute of limitations in section 514.

plaintiff, like the importer in *Proctor*, initially treated the letters otherwise than as section 514 protests does not bar it from now contending that they are protests. This is particularly true when it is considered that each of plaintiff's letters contain all the required elements of a protest. Not only were the letters filed within 60 days after the dates of liquidation of the entries involved, they set forth the following details: the entry numbers; the dates of entry; the dates of liquidation; the category of merchandise; the provision of the tariff schedules under which the merchandise was classified; a citation to the case of Mattel, Inc. v. United States, C.D. 3531, which held the merchandise classifiable under item 790.70 as "wigs"; the provision under which the merchandise was claimed classifiable; and the rates of duty applicable to the conflicting provisions. In sum, as previously indicated, the letters (written by a nonprofessional employee of the importer) left no doubt as to the nature of plaintiff's objection to the district director's liquidation of the entries in question, namely that the district director erred in assessing the imported doll wigs under item 737.90 at 35% ad valorem and that they should have been assessed at 14% ad valorem under item 790.70 in accordance with the decision of this court in C.D. 3531. Since the letters clearly set forth the claim of the importer and were filed within the time required by section 514, they should have been treated as protests by the local customs officials. As stated in The George C. Whitney Co. v. United States, 16 Ct.Cust.Appls. 301, 303, T.D. 42874 (1928):

> The statute requiring a protest on the part of importers was not designed for men learned in the law and trained to the niceties in pleading but for men engaged in commercial pursuits. Strict rules of construction are not applicable to protests, and it is sufficient if the importer indicates distinctly and definitely the sources of his complaint and his desire to make it the foundation of a claim against the Government. * * *

Nor is the result altered by the fact that the letters here were ostensibly treated by the district director as section 520(c) requests, whereas those in *Proctor* were returned as section 514 protests. The test for determining the sufficiency of a protest under section 514, as outlined above, is an objective one and is not dependent upon the district director's subjective reaction thereto. Moreover, it is interesting to note that while the letters of the district director's supervising liquidator to plaintiff denying the latter's claims stated that the claims were reviewed under section 520(c), the letters went on to state that the claims were disallowed because (1) the liquidated classification was correct; and (2) the Commissioner's ruling in T.D. 69–2 limited C.D. 3531, to the specific importation there involved. In other words, the district director denied the claims on the merits, rather than on the basis that section 520(c) was not applicable to correct an alleged erroneous classification of merchandise. Cf. e. g., United China & Glass Co. v. United States, *supra*, 66 Cust.Ct. at 209. From this, it would seem that in substance—although not in form—the district director in actuality treated plaintiff's "sec. 520(c) request letters" as section 514 protests.

In conclusion, the court finds that the letters of request constituted timely protests within the meaning of section 514, and that the protests against the district director's refusal to reliquidate the entries in accordance therewith were timely filed. Inasmuch as the merchandise consists of wigs for dolls the same in all material respects as those involved in C.D. 3531 which were held to be properly classifiable as "wigs" under item 790.70, plaintiff must prevail in its stated second cause of action. Therefore, plaintiff's motion for judgment on the pleadings is granted and defendant's motion for summary judgment is denied. The district director at the port of Los Angeles is directed to reliquidate the entries accordingly.