**SANFORD STEEL PIPE PRODUCTS CO.**

v.

**UNITED STATES.**

C.D. 4346;  Protest Nos. 68/31408–8268,
68/58036–10107.

. United States Customs Court,
Third Division.
March 24, 1972.

Allerton deC. Tompkins, New York City, for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (James Caffentzis, New York City, trial attorney), for defendant.

Before RICHARDSON and LANDIS, Judges.

RICHARDSON, Judge:

The question arising in these two protests covering 11 entries of steel pipe fittings imported from Germany and consolidated for trial is whether certain letters sent to the district director by a customs broker constitute appeals for

reappraisement so as to invalidate liquidation of the affected entries which took place prior to a determination of said "appeals." The text of the letters in question, dated September 25, 1967, and October 19, 1967, and received in evidence at the trial with the official papers, read:

> District Director of Customs
> 610 South Canal Street
> Chicago, Illinois 60607
>
> Attention: Mr. L. W. Partyka
>
> * * * * * * * * * *
>
> RE: Notice of Appraisement or Reappraisement A/C Sanford Steel-Pipe Products Company
>
> * * * * * * * * * *
>
> Dear Mr. Partyka:
>
> The above company is now our account and we have Power of Attorney to act in their behalf.
>
> We request relief under the Provisions of Section 520–C1, Tariff Act of 1930, as amended that on a petition or request on the above appraised value exceeds the entered value.
>
> We ask relief for the above appraised value and wish to thank you in advance in this matter, I remain
>
> > Very truly yours,
> >
> > D. C. ANDREWS INTERNATIONAL, INC.
> >
> > Allan W. Appel
> > Import Manager

The entry papers show that the merchandise was entered by the plaintiff as consignee, to whom the district director sent the notices of appraisement referred to in the caption of the broker's letters set out above. Sanford Takiff, plaintiff's secretary and general manager, testified that he received the said notices of appraisement, and that he sent copies of them to his broker, Allan W. Appel, who at that time was with D. C. Andrews, and requested the broker to "protest these reappraisements." And Allan W. Appel testified that he had a power of attorney authorizing him to act on behalf of the plaintiff, and that he sent the 11 letters in question to the district director. The power of attorney was not offered or received in evidence. And upon the government counsel's objection testimony as to Mr. Appel's intention in sending the letters was disallowed. But by way of offer of proof it appears that Appel's intention in sending the letters to the district director was to ask for relief under sections 501 and 520(c) (1) of the Tariff Act of 1930, as amended.

The official papers disclose that the district director treated the letters in question as requests for relief under section 520(c) (1), acted upon and denied the same, and thereafter liquidated the subject entries. This course of action on the part of the district director was followed by the filing of the instant protests averring that liquidation of the said entries is null and void because reappraisement appeals had been filed against them which had not been acted upon at the time of liquidation. The broker's letters of September 25th and October 19th, 1967, are the documents which plaintiff contends constitute reappraisement appeals.

Apart from the fact that it was never developed in the record as to whether the alleged power of attorney was given by plaintiff to D. C. Andrews or to Mr. Appel individually, I am not inclined to disturb the ruling of the trial judge on the exclusion of evidence of Appel's *intention* in sending the letters in question to the district director. In either case the recipient of the power of attorney would have had no standing under the post-entry appointment to prosecute reappraisement appeals as agent of the plaintiff-consignee. Neither D. C. Andrews nor Appel could be deemed the "agent" of the consignee because neither entered the merchandise in that capacity in accordance with 19 U.S.C.A., section 1484(a) (section 484(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1953) which provides in relevant part:

. . . The consignee of imported merchandise shall make entry therefor either in person or by an agent authorized by him in writing under such regulations as the Secretary of the Treasury may prescribe. . . .

The provisions of 19 U.S.C.A., section 1501(a) [1] (section 501(a), Tariff Act of 1930, as amended by the Customs Simplification Act of 1953) upon which plaintiff relies for the tender of evidence of intention is retrospective in its use of the term "consignee, his agent", and is replete with instances of the agent's connection with the entry transaction. Thus, the agent making entry pursuant to section 1484(a) is empowered in an appropriate case pursuant to section 1501(a) to require the district director to give him notice of appraisement if such request is made *prior to*

*appraisement of the merchandise*—a circumstance which precludes any notion of agency under section 1501(a) under a post-entry appointment. And the agent's connection with the entry transaction insofar as section 1501(a) is concerned was even more strongly recognized in the language of the statute as enacted and in effect prior to the 1953 Customs Simplification Act wherein section 1501(a) contained a clause which read:

No such appeal filed by the consignee or his agent shall be deemed valid, unless he has complied with all the provisions of this chapter relating to the entry and appraisement of such merchandise.

Consequently, inasmuch as the present text of section 1501(a) as well as its history clearly reveals that statute to be corollary to section 1484(a) in the application of the term "consignee, his agent", no useful purpose in this litigation would be served by evidence of Appel's intention to prosecute reappraisement appeals as agent of the consignee under a post-entry appointment—a posture which, for purposes of section 1501(a), would allow the agent to possess a detachment from the entry transaction not permitted his principal, the consignee.

But, assuming that section 1501(a) could be read as supporting an "agent" of the consignee under a post-entry appointment, the agent's letters of September 25th and October 19th, 1967 noted herein, do not constitute reappraisement appeals in my opinion, even if that is what the author intended them to be. As I read these letters they unequivocally, though inarticulately, petition the district director to relieve the

---

1. The collector shall give written notice of appraisement to the consignee, his agent, or his attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value, or (3) in any case, if the consignee, his agent, or his attorney requests such notice in writing before appraisement, setting forth a substantial reason for requesting the no-

tice. The decision of the appraiser, including all determinations entering into the same, shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed . . . by the consignee or his agent with the collector within thirty days after the date of personal delivery, or if mailed the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. . . .

plaintiff-consignee from the appraised value perforce of authority vested in the district director to act under 19 U.S. C.A., section 1520(c) (1) [2] (section 520 (c) (1), Tariff Act of 1930, as amended by the Customs Simplification Act of 1953). This is what the district director understood these letters to request of him. And this is what the district director proceeded to do, resolving the matter against the plaintiff-consignee. As the defendant points out in its brief on page 7, "In determining the sufficiency of an appeal, it is the document which must be examined and not the mind of the party." Measured by this test which I find to be applicable here, plaintiff obtained from the district director the performance it sought of him.

The protests are overruled. And Judgment will be entered herein accordingly.

LANDIS, Judge:

I concur only in the result overruling these protests.

The letters claimed to be appeals for reappraisement were written and sent to customs by a customhouse broker, in the capacity of agent for the plaintiff. The sense of the letters is not that they are appeals for reappraisement to a judge of this court under section 501 of the Tariff Act of 1930, as amended (19 U.S.C.A., section 1501), but rather requests for administrative relief under section 520(c) (1) of the Tariff Act of 1930 (19 U.S.C.A., section 1520).

The record establishes that the person who wrote the letters was himself a customhouse broker who had been handling customs business for 25 years. One must conclude that a customhouse broker in business 25 years, intending to

file appeals for reappraisement under section 501, who does not use the familiar and simple customs form (Customs Form 4305) made available for filing an appeal to reappraisement, or who does not, at very least, couch his letters in a sense that conveys they are intended as appeals for reappraisement under section 501, does so at the great risk and peril of the result reached in this case. Cf. Continental Ore Corporation v. United States, 67 Cust.Ct., C.D. 4274, 331 F. Supp. 1060 (1971).

---

2. (c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction; * * *